UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SUNITHA GUNTIPALLY,<br><br>Defendant. | Case Nos. 16-cr-00189-JSC-1<br>21-cv-03304-JSC<br><br>**ORDER RE: HABEAS PETITION**<br>Re: Dkt. No. 433 |

Before the Court is Defendant Sunitha Guntipally's motion to vacate, set aside or correct her sentence pursuant to 28 U.S.C. § 2255. (Dkt. No. 433.)[1] Ms. Guntipally is proceeding without representation by a lawyer. Having carefully reviewed the parties' briefing, the Court determines that an evidentiary hearing is not required because Ms. Guntipally is not entitled to relief as a matter of law, and DENIES the motion.

**BACKGROUND**

Ms. Guntipally is a citizen of India and, since 2003, a lawful permanent resident of the United States. (Dkt. No. 440-1 ¶ 6.) In 2017, Ms. Guntipally pleaded guilty to conspiracy to commit visa fraud, use of false documents, mail fraud, obstruction of justice, and witness tampering in violation of 18 U.S.C. § 371.[2] (Dkt. No. 165 (plea agreement); *see* Dkt. No. 112 (indictment).) The plea agreement admitted that Ms. Guntipally had "submitted . . . more than 100 phony H-1B visa applications" to the federal government containing "false representations and

---

[1] Record citations are to material in the Electronic Case File ("ECF") for Case No. 16-cr-00189-JSC-1; pinpoint citations are to the ECF-generated page numbers at the top of the documents.
[2] At times the relevant documents refer to "false statements" in place of "use of false documents." (*E.g.*, Dkt. No. 112 at 1; Dkt. No. 165 ¶ 1. *But see* Dkt. No. 112 at 4 ("use of false documents").)

material omissions about the nature and existence of purported end-client companies and the nature, existence, and scope of H-1B positions." (Dkt. No. 165 at 3.) The fraudulent applications "were designed and intended to create a pool of H-1B beneficiaries who then could be placed at legitimate employment positions," giving Ms. Guntipally and others "an unfair advantage over competing employment staffing firms." (*Id.* at 4.)

The district court sentenced Ms. Guntipally to 52 months' imprisonment and three years of supervised release. (Dkt. No. 206.) The Ninth Circuit vacated and remanded for resentencing because the district court did not invite Ms. Guntipally to allocute at her sentencing hearing. (Dkt. No. 278.) On remand, the district court resentenced Ms. Guntipally to the same sentence. (Dkt. No. 362.) She self-surrendered on March 2, 2018. (*See* Dkt. No. 249.)

In 2019, Ms. Guntipally moved to withdraw her guilty plea based, in part, on ineffective assistance from her former counsel Paul Meltzer. (Dkt. No. 296.) The district court denied the motion to withdraw and declined to hold an evidentiary hearing. (Dkt. No. 334.) The Ninth Circuit affirmed, noting that "the record provided sufficient evidence to show that Guntipally's claims of ineffective assistance of counsel were unfounded." (Dkt. No. 421.)

In 2020, Ms. Guntipally moved to reduce her sentence after serving 33 of 52 months. (Dkt. No. 423; *see* Dkt. No. 428 at 2.) The district court granted the motion, reduced the sentence to time served, and ordered Ms. Guntipally released to immigration custody pursuant to her detainer for removal to India. (Dkt. No. 428.) The Bureau of Prisons released Ms. Guntipally in November 2020. (Dkt. No. 440-1 ¶¶ 8–10, 17.) In January 2021, the U.S. Department of Homeland Security served Ms. Guntipally with a notice to appear, placing her in removal proceedings. (*Id.* ¶¶ 11–12.) A petition for alien relative was filed on Ms. Guntipally's behalf and the removal proceedings were administratively closed to allow U.S. Citizenship and Immigration Services ("USCIC") to adjudicate the petition. (*Id.* ¶¶ 13–16.) Ms. Guntipally is not currently in immigration custody. (*Id.* ¶ 17.)

## DISCUSSION

Under 28 U.S.C. § 2255, a person in federal custody may move to vacate, set aside, or correct a sentence "imposed in violation of the Constitution or laws of the United States, or [on the

2

grounds] that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). As the government concedes, Ms. Guntipally was on supervised release at the time she filed her motion and thus was "in custody" for purposes of Section 2255. *See Maleng v. Cook*, 490 U.S. 488, 490–91 (1989) (per curiam) (explaining that "in custody" includes parole and other contexts where "the petitioner's release from physical confinement under the sentence in question [is] not unconditional"). A Section 2255 petitioner is entitled to an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). "[T]his standard . . . require[es] an evidentiary hearing where the movant has made specific factual allegations that, if true, state a claim on which relief could be granted." *United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003) (cleaned up).

Ms. Guntipally argues that her sentence violated her Sixth Amendment rights because her counsel Mr. Meltzer failed to advise her of an available defense.[3] To succeed on an ineffective assistance of counsel claim, Ms. Guntipally must show that (1) counsel's performance was deficient under an objective standard and (2) she was prejudiced because, but for counsel's errors, she would have insisted on going to trial rather than pleading guilty. *See Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985); *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984).

### A.   Deficient Performance

Ms. Guntipally argues that counsel failed to advise her of a potential defense: "that any misstatements alleged were not material to the decision to grant or deny the visas sought, under a

---

[3] Although she focuses on the Sixth Amendment, Ms. Guntipally also cites the Fifth Amendment. (Dkt. No. 433-1 at 1, 11 ("Mrs. Guntipally lacked knowledge required under the Fifth Amendment.").) The Fifth Amendment states that no person "shall be compelled in any criminal case to be a witness against himself" and provides a right to counsel in custodial interrogations. U.S. Const. amend. V; *see McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991). Nothing in Ms. Guntipally's motion refers to custodial interrogation; it focuses on her counsel's representation during plea bargaining. The Fifth Amendment also provides a right against self-incrimination at trial, *see Chavez v. Robinson*, 12 F.4th 978, 985–86 (9th Cir. 2021), and a right of due process, *see Bolling v. Sharpe*, 347 U.S. 497, 498–99 (1954), neither of which is apparently relevant to Ms. Guntipally's motion. Accordingly, the basis for her invocation of the Fifth Amendment is not clear.

3

proper construction of the applicable [USCIS] criteria." (Dkt. No. 433-1 at 2.) Three of the five offenses for which she pleaded guilty to conspiracy require the element of materiality. *See United States v. Woods*, 335 F.3d 993, 998–99 (9th Cir. 2003) (mail fraud); *United States v. Matsumaru*, 244 F.3d 1092, 1101 (9th Cir. 2001) (visa fraud); *United States v. Serv. Deli Inc.*, 151 F.3d 938, 941 (9th Cir. 1998) (false statements or use of false documents). Ms. Guntipally relies on *ITServe Alliance, Inc. v. Cissna*, which held that USCIS's requirements that employers provide "proof of non-speculative work assignments [] for the duration of the visa period" and a corresponding itinerary exceeded its rulemaking authority. 443 F. Supp. 3d 14, 20 (D.D.C. 2020). She argues that her fraudulent statements "with respect to the end employer and the nature, existence and scope of [H-1B] positions" were not "material" in light of *ITServe*. (Dkt. No. 443-1 at 7–8.) "[I]n imposing the requirements these alleged misstatements could conceivably be considered material to, [USCIS] exceeded the law and cannot enforce such requirements." (*Id.* at 8 (cleaned up).)

"A statement made to public officials is material when 'it has a natural tendency to influence, or was capable of influencing, the decision of the decisionmaking body to which it was addressed.'" *United States v. Narang*, No. 19-4850, 2021 WL 3484683, at *7 (4th Cir. Aug. 9, 2021) (unpublished) (quoting *Kungys v. United States*, 485 U.S. 759, 770 (1988), and concluding that substantial evidence supported finding that false representations to USCIS "related to [H-1B] beneficiaries' work locations and wages" were material). In her plea agreement, Ms. Guntipally agreed that H-1B applications "required the petitioner to represent to the United States, under penalty of perjury and criminal and civil penalties, the true name, location, terms, and duration of the underlying employment"; that she submitted "petitions and other supporting documents . . . that contained false representations and material omissions about the nature and existence of purported end-client companies and the nature, existence, and scope of H-1B positions," including listing end-client companies that "either did not exist or never received the proposed H-1B workers"; and that she "knew the false statements contained in [the] petition [for foreign worker P.M.] were material to the activities and decisions of the [government] in considering and evaluating beneficiary P.M. for an H-1B visa." (Dkt. No. 165 at 3–4.)

*ITServe* does not support Ms. Guntipally's argument or cast doubt on any of the

4

1  admissions in her plea agreement.  That case held that USCIS erred in denying H-1B visa
2  applications on the basis that the employers did not provide proof of non-speculative work
3  assignments for the three-year visa period and corresponding itineraries.  *ITServe*, 443 F. Supp. 3d
4  at 38–42.  The case in no way suggests that Ms. Guntipally's false statements about available
5  positions were not material.  Even if USCIS could not require employers to provide certain kinds
6  of proof, applicants such as Ms. Guntipally are required to be truthful in the H-1B applications
7  themselves.  *See* 18 U.S.C. §§ 1546, 1001(a)(1)-(3); *see also Narang*, 2021 WL 3484683, at *7.

8      Counsel was not constitutionally ineffective in failing to advise Ms. Guntipally that her
9  statements were immaterial, because *ITServe* does not provide an objectively reasonable basis for
10 that legal advice.  *See Leonti*, 326 F.3d at 1120 ("Even if the facts alleged by [petitioner] are true,
11 [counsel's] conduct in this regard did not constitute ineffective assistance.").  Nor is there any
12 other apparent reason to conclude that counsel's advice, or lack thereof, on materiality was
13 objectively inaccurate.  Accordingly, there was no deficient performance.  *See Hill*, 474 U.S. at
14 58–59.

15     \* \* \*

16     Because counsel's performance was not deficient, Ms. Guntipally was not prejudiced by
17 counsel's failure to advise her of a materiality defense.  *See Leonti*, 326 F.3d at 1121.  Moreover,
18 no evidentiary hearing is required because even if all of Ms. Guntipally's factual allegations are
19 true, she is not entitled to relief under 28 U.S.C. § 2255.  *See id.* at 1116.

20 **CONCLUSION**

21     The Court declines to hold an evidentiary hearing and DENIES Ms. Guntipally's motion.
22     This Order disposes of Docket No. 433 in Case No. 16-cr-00189-JSC-1 and Docket No. 1
23 in Case No. 21-cv-03304-JSC.

24     **IT IS SO ORDERED.**

25 Dated: May 23, 2022

                                                JACQUELINE SCOTT CORLEY
                                                United States District Judge